IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JAMES R. WOODWARD, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | |
| FREEDOM STORES, INC., ) | Case NO.: 2:13-cv-02254-SAC-KGS |
| d/b/a Freedom Furniture & Electronics, ) | |
| and FREEDOM ACCEPTANCE ) | |
| CORP., ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## PLAINTIFF'S AMENDED COMPLAINT

COMES NOW Plaintiff James Woodward, by and through counsel A. Scott Waddell of the Waddell Law Firm LLC and Bryce B. Bell of Bell Law, LLC, and for his Amended Complaint against Defendants Freedom Stores, Inc. and Freedom Acceptance Corp., states as follows.

1.  Plaintiff James Woodward ("James" or "Plaintiff") is an individual that resided in Leavenworth County, Kansas.

2.  Defendant Freedom Stores, Inc., ("FSI") was a "supplier" under the Kansas Consumer Protection Act ("KCPA"), specifically K.S.A. § 50-624 (j).

3.  Defendant FSI was served with this Complaint on May 2, 2013.

4.  Defendant Freedom Acceptance Corp. ("FAC") was also a "supplier" under the KCPA, specifically K.S.A. § 50-624 (j).

5.  Defendant FAC can be served by serving its registered agent John F. Melley at 1150 E. Little Creek Road, Norfolk, Virginia, 36518.

6.  Jurisdiction and venue in the United States District Court in the District of Kansas are proper in that FSI and/or FAC attempted to enforce a consumer transaction

1

and attempted to collect an alleged debt from Plaintiff in Kansas. Further, jurisdiction and venue in the United States District Court in the District of Kansas are proper in that Plaintiff was a resident of Kansas. Further, at the present time this Court has original jurisdiction of this civil action as the Plaintiff, James Woodward and all of the Defendants are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

7. James was a "consumer" under the KCPA, specifically K.S.A. § 50-624 (b).

8. James purchased a television and surround sound system from FSI in April of 1998.

9. James made this purchase using the credit extended to him by FSI ("FSI Account").

10. James was an active member of the United States Army at the time of purchase.

11. James made his first payment of $204.00 to FSI on or about June 18, 1998.

12. James made three additional payments of $204.00 to FSI on or about July 1st, August 1st and September 1st of 1998.

13. James made eighteen (18) consecutive monthly payments of $206.00 each to FSI from February 1999 to July of 2000.

14. The majority of James' payments made to FSI were automatically deducted directly from his military paycheck as a discretionary allotment.

15. In June of 2000, Plaintiff made what he believed to be a final payment on the FSI Account. This payment was deducted directly from his military paycheck as a discretionary allotment.

16. The June 2000 payment posted to Plaintiff's FSI Account on or about July 1, 2000.

17. Upon information and belief, James contacted – or was contacted by – a representative of FSI and/or FAC sometime in June of 2000.

18. During this conversation, an agent of FSI and/or FAC represented to Plaintiff that the payment of $206.00 credited to his account on or about July 1, 2000 was his final payment on the FSI Account.

19. James relied on the representations of FSI and/or FAC's agent that the FSI Account was fully paid off when he stopped his discretionary monthly allotment in July of 2000.

20. James received two more paychecks from the military in July of 2000 and August of 2000.

21. On or about August 4, 2000, James was honorably discharged from active military duty.

22. From approximately 2004 to 2006, FSI and/or FAC (through its agents including but not limited to Heidi Truitt) contacted James via telephone and written correspondence in an attempt to collect on an alleged debt relating to the FSI Account.

23. FAC alleged that James owed approximately $895.00 (principal and interest) on the FSI Account at that time.

24. James disputed the validity of any alleged debt owed on the FSI Account.

25. James never agreed to have the alleged debt re-aged during any of these contacts.

26. James never agreed to a payment plan during any of these contacts.

27. James never agreed that he owed any money on the FSI Account during any of these contacts.

28. In 2008, FSI and/or FAC submitted information to Equifax that James' FSI Account was opened in April of 1998.

29. In 2008, FSI and/or FAC submitted information to Equifax that James' FSI Account had a balance of $895.00.

30. In 2008, FSI and/or FAC submitted information to Equifax that James' FSI Account had a date of first delinquency in January of 2005.

31. January of 2005 was not the date of first delinquency on the FSI Account.

32. Sometime in 2008, James noticed that Equifax was reporting the information described above in Paragraphs 28-30.

33. In May of 2009, Plaintiff requested that Equifax investigate the FSI Account.

34. Equifax stated that during the course of its investigation it contacted each source directly.

35. On June 27, 2009, Equifax concluded its investigation and notified Plaintiff via written correspondence that the FSI Account would be deleted from his credit file (Confirmation # 9153013843).

36. On or about August 21, 2012, FSI and/or FAC sent a letter to James which stated on its letterhead an apparent d/b/a of "Freedom Furniture & Electronics" and was

signed by the "Customer Financial Services Department" concerning Account # 98-75427-1 ("Letter No. 1").

37. On or about September 7, 2012, James received Letter No.1.

38. Letter No. 1 was addressed to James Woodward at 518 Forest Glen Ln, Lansing, KS, 66043-1713.

39. Letter No. 1 alleged that an outstanding debt was still owed on Account Number 98-75427-1.

40. In Letter No. 1, FSI and/or FAC, through its employees and/or agents made the following statements:

a. "Account Balance: $2066.98"; and

b. "Your account has been forwarded to my office for failure to keep your payments in good standing"; and

c. "Your contractual agreement has been broken"; and

d. "Your charged off account is being reviewed again for further collection activity"; and

e. "We have not received payments agreed upon between you and the Customer Financial Services Department"; and

f. "You are not continuing to keep your word"; and

g. "Further action may take place in the event you do not comply"; and

h. "This may include, but is not limited to, Command Notification or an agent coming out to your home or place of business to collect payment or assess value of merchandise".

41. In July, August and September of 2012, FSI and/or FAC also placed at least five telephone calls to James.

42. During these phone calls, the individuals initiating or receiving the phone calls represented that they were calling on behalf of one or more of the following: Freedom Stores, Freedom, Customer Financial Services and/or Freedom Furniture.

43. James informed the callers that he did not have an account with any of the entities mentioned in Paragraph 42 and that he did not recognize any alleged debt owed to those entities.

44. Despite James' contention that he did not owe any money, neither FSI nor FAC ever provided or offered to provide any documentation that he was legally obligated to pay an outstanding debt to either FSI or FAC.

45. Despite James' contention that he did not owe any money, neither FSI nor FAC ever provided or offered to provide any documentation that he never fully paid his FSI Account.

46. Despite James' contention that he did not owe any money, neither FSI nor FAC provided a verbal explanation as to why he owed money to either FSI or FAC.

47. James was forced to block these numbers in an attempt to avoid the continued harassment.

48. After receiving Letter No. 1 which threatened "Command Notification" and other collection activities, James was afraid of losing his military security clearance(s). As such, James notified several of his supervisors and/or commanding officers that FSI and/or FAC were attempting to collect a debt and that they, as his Commanding Officers, could be contacted based on the representations made in Letter No. 1.

49. After these renewed collection activities in July, August and September of 2012, Plaintiff retained A. Scott Waddell.

50. On September 21, 2012, A. Scott Waddell sent Freedom Stores, Inc. a *Nelson v. Miller* letter via U.S. Certified Mail Return Receipt.

6

51. Mr. Waddell's September 21, 2012 correspondence stated that James was represented by counsel, A. Scott Waddell.

52. Mr. Waddell's September 21, 2012 correspondence stated that James had received Letter No. 1 from FSI and/or FAC and that it was both deceptive and unconscionable under the KCPA.

53. On October 19, 2012, FSI's counsel Almetia Fields Hardman ("Hardman") sent a letter via facsimile transmission to A. Scott Waddell.

54. Hardman's October 19, 2012 correspondence, on behalf of "Freedom Furniture & Electronics", acknowledged receipt of the September 21, 2012 letter sent by A. Scott Waddell.

55. Hardman's October 19, 2012 correspondence, on behalf of "Freedom Furniture & Electronics", stated that their client disputed the allegations contained in Mr. Waddell's September 21, 2012 letter and denied any wrongdoing.

56. Hardman's October 19, 2012 correspondence, on behalf of "Freedom Furniture & Electronics", rejected Plaintiff's initial settlement offer.

57. Hardman's October 19, 2012 correspondence, on behalf of "Freedom Furniture & Electronics", requested that all future communications be directed to The Law Offices of William B. Parkhurst, P.C.

58. Hardman's October 19, 2012 correspondence, on behalf of "Freedom Furniture & Electronics", did not dispute Plaintiff's assertions that FSI and/or FAC had previously represented to James that the FSI Account had been fully paid off since July of 2000.

59. Hardman's October 19, 2012 correspondence, on behalf of "Freedom Furniture & Electronics", did not deny that FSI and/or FAC had made "improper collection attempts".

60. On or about October 23, 2012, FSI and/or FAC sent four additional letters to James which stated on letterhead an apparent d/b/a of "Freedom" and was signed by the "Customer Financial Services Department" concerning Account Number 98-75427-1 ("Letter Nos. 2-5").

61. On or about November 8, 2012, James received Letter Nos. 2-5.

62. Letter Nos. 2-5 were postmarked November 8, 2012.

63. Letter Nos. 2-5 were addressed to James Woodward at 518 Forest Glen Ln, Lansing, KS, 66043-1713.

64. Letter Nos. 2-5 were sent after FSI and/or FAC received notification that Plaintiff was represented by counsel A. Scott Waddell.

65. In Letter Nos. 2-5, FSI and/or FAC, through its employees and/or agents made the following statements:

a. "Account Balance: $2094.67"; and

b. "Your account has been forwarded to my office for failure to keep your payments in good standing"; and

c. "Your contractual agreement has been broken"; and

d. "Your charged off account is being reviewed again for further collection activity"; and

e. "We have not received payments agreed upon between you and the Customer Financial Services Department"; and

f. "You are not continuing to keep your word"; and

g. "Further action may take place in the event you do not comply"; and

8

h. "This may include, but is not limited to, Command Notification or an agent coming out to your home or place of business to collect payment or assess value of merchandise; and

i. "Your account with this office is seriously delinquent and has been charged off";

j. "We have reported your charge off to the credit bureaus at the time it became a bad debt which rated a negative rating on all three (3) of your credit bureaus";

k. "Since it is TAX TIME this would be an excellent opportunity… and possibly lower your balance in the form of a settlement or reduced payments instead of paying the extra interest that accumulates daily";

l. "Call us today at 888-840-6229 to stop future collection activity and or [sic] legal action";

m. "We are currently reviewing our rights under the terms of your contract";

n. "I urge you to work with us to avoid additional late charges, fees and potentially embarrassing collection activity on our part to recover against you"; and

o. "Your account with this office is seriously delinquent and has been charged off".

66. On or about January 21, 2013, FSI and/or FAC sent a letter to James which stated on its letterhead and envelope "Freedom Acceptance Corporation" and was signed by FSI's and/or FAC's agent Stephanie Williams, VP, Collection Operations, concerning Account Number 98-75427-1 ("Letter No. 6").

67. On or about February 12, 2013, James received Letter No. 6.

68. Letter No. 6 was addressed to James' new address in Texas at 1039 Daffodil Way, San Antonio, TX, 78245-2463.

69. The envelope of Letter No. 6 stated "Settlement Offer Enclosed".

9

70. Letter No. 6 stated that James could "re-establish his credit with Freedom once the account is settled" and "may be able to purchase more of the products you love".

71. Letter No. 6 was sent after FSI and/or FAC received notification that Plaintiff was represented by counsel A. Scott Waddell.

72. In Letter No. 6, FSI and/or FAC, through its employees and/or agents made the following statements:

  a. "Account Balance: $2135.76"; and

  b. "Eliminate Your Debt & Improve Your Credit Score"

  c. "You'll see your credit score improve as soon as we are able to eliminate the debt!"

73. At the time of the Defendants' aforementioned statements made between July of 2012 and February of 2013, James did not have an open account, current agreement or legally enforceable contract with either FSI or FAC.

74. At the time of the Defendants' aforementioned statements made between July of 2012 and February of 2013, neither FSI nor FAC had a legal right to demand any monetary payments from James.

75. At the time of the Defendants' aforementioned statements made between July of 2012 and February of 2013, neither FSI nor FAC had the legal right to threaten or intent to collect on the FSI Account at James' home or place of business.

76. At the time of the Defendants' aforementioned statements made between July of 2012 and February of 2013, neither FSI nor FAC had a legal right to threaten to engage in any "embarrassing collection activity" and/or "legal action".

77. At the time of the Defendants' aforementioned statements made between July of 2012 and February of 2013, neither FSI nor FAC had the ability, authority or intent to contact James' commanding officers.

78. At the time of the Defendants' aforementioned statements made between July of 2012 and February of 2013, neither FSI nor FAC had the legal right to submit negative or derogatory credit information to the credit bureaus, and did not have the ability to improve Plaintiff's credit or score by making payment arrangements to the Defendants.

79. At the time of the Defendants' aforementioned statements made between July of 2012 and February of 2013, neither FSI nor FAC had the legal authority to assess additional late charges, fees or interest.

80. The Kansas Supreme Court has previously held that debt collection activities fall within the definition of a "supplier" and are subject to the provisions of the Kansas Consumer Protection Act. *State ex rel. Miller v. Midwest Serv. Bur. of Topeka, Inc.*, 229 Kan. 322, 329, 623 P.2d 1343, 1349 (1981).

81. FSI and/or FAC, through its/their counsel, refused James' offer to settle the matter necessitating the filing of this lawsuit.

82. FSI and/or FAC are vicariously liable for the actions and omissions of its employees and/or agents.

# COUNT ONE
## BREACH OF THE KANSAS CONSUMER PROTECTION ACT
## DECEPTIVE AND UNCONSCIONABLE ACTS AND PRACTICES
Defendant Freedom Stores, Inc.
Defendant Freedom Acceptance Corp.

83.     Plaintiff, for this Count I of Plaintiff's Amended Complaint against Defendants, incorporates the previous paragraphs as if wholly set forth herein.

84.     Defendants are both "suppliers" under the Kansas Consumer Protection Act ("KCPA"), specifically K.S.A. § 50-624 (j).

85.     Plaintiff was a "consumer" under the KCPA, specifically K.S.A. § 50-624 (b).

86.     Plaintiff's installment loan, any payments made thereto, and any collection attempts made upon an alleged debt created on the loan and/or installment loan agreement constitute a "consumer transaction" under the KCPA, specifically K.S.A. § 50-624 (c).

87.     Plaintiff has been damaged and is "aggrieved" pursuant to the KCPA as a result of Defendants' conduct.

88.     Defendants' violations of K.S.A. § 50-627, Unconscionable acts and practices, include, but are not limited to:

> (a)     generally making unconscionable representations and/or misrepresentations, and/or engaging in unconscionable conduct, in violation of K.S.A. § 50-627 (a) including, but not limited to:
>
>> 1. offering to clear up, preserve and improve Plaintiff's credit and credit score if he made payment arrangements when Defendants did not have a legal right to enforce an existing contract against Plaintiff, were not currently reporting any negative information to the credit bureaus about Plaintiff and did not have a legal right to report any negative information to the credit bureaus and, thus, making payment arrangements to the Defendants could not have possibly improved his credit or credit score;

12

2. submitting false information, including false dates of delinquency, to a credit bureau in order to continue to collect an alleged debt from Plaintiff;

3. falsely threatening to contact Plaintiff's commanding officer when it did not possess the legal right or intent to do so;

4. falsely threatening to come to Plaintiff's home or place of business to collect payment or assess value of the merchandise (15 year-old television and stereo system);

5. falsely threatening legal action against Plaintiff when Defendants did not possess the legal right or intent to pursue a lawful action against Plaintiff;

6. falsely threatening additional embarrassing collection activity against Plaintiff;

7. contacting Plaintiff directly by mail (including sending four letters in one day) even after Defendants, through their attorneys, were expressly notified that Plaintiff was represented by counsel;

8. continuing to make collection phone calls to Plaintiff's mobile phone despite being notified that Plaintiff is represented by counsel and that Plaintiff disputed the alleged debt;

9. sending a settlement offer directly to Plaintiff (and not his attorneys) after Defendants were notified that Plaintiff was represented by counsel;

10. employing a business model that requires, as a condition of applying for credit, to waive all privacy rights under any state, federal or military statute, law or directive;

11. employing a business model that requires, as a condition of applying for credit, to waive all of protections under any state or federal fair debt collection practices statute to the fullest extent permitted by law;

12. continuing to attempt to collect on a non-existent debt after Defendants represented to Plaintiff that he made a final payment in June of 2000;

13. continuing to attempt to collect a debt for which the statute of limitations on the underlying contract has since expired;

13

>   14. falsely stating and/or implying Plaintiff's alleged debt is continuing to accrue interest; and
>
>   15. engaging in a pattern of conduct that, when taken in its totality, is unconscionable.

(b) taking advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's ignorance of the law, in violation of K.S.A. § 50-627 (b)(1); and

(c) the transaction the supplier induced the consumer to enter into was excessively onesided in favor of the supplier K.S.A. § 50-627 (b)(5).

89. Defendants' violations of K.S.A. § 50-626, Deceptive acts and practices,

include, but are not limited to:

- (a) the supplier made false and/or misleading representations, knowingly or with reason to know, of fact, in violation of K.S.A. § 50-626 (a), to which Plaintiff relied upon said representation(s) to his detriment;

- (b) the supplier made specific false and/or misleading representations in violation of K.S.A. § 50-626 including, but not limited to:

  > 1. offering to clear up, preserve and improve Plaintiff's credit and credit score if he made payment arrangements when Defendants did not have a legal right to enforce an existing contract against Plaintiff, were not currently reporting any negative information to the credit bureaus about Plaintiff and did not have a legal right to report any negative information to the credit bureaus and, thus, making payment arrangements to the Defendants could not have possibly improved his credit or credit score;
  >
  > 2. submitting false information, including false dates of delinquency, to a credit bureau in order to continue to collect an alleged debt from Plaintiff;
  >
  > 3. falsely threatening to contact Plaintiff's commanding officer when it did not possess the legal right or intent to do so;
  >
  > 4. falsely threatening to come to Plaintiff's home or place of business to collect payment or assess value of the merchandise (15 year-old television and stereo system);

14

5. falsely threatening legal action against Plaintiff when Defendants did not possess the legal right or intent to pursue a lawful action against Plaintiff;

6. falsely threatening additional embarrassing collection activity against Plaintiff;

7. contacting Plaintiff directly by mail (including sending four letters in one day) even after Defendants, through their attorneys, were expressly notified that Plaintiff was represented by counsel;

8. continuing to make collection phone calls to Plaintiff's mobile phone despite being notified that Plaintiff is represented by counsel and that Plaintiff disputed the alleged debt;

9. sending a settlement offer directly to Plaintiff (and not his attorneys) after Defendants were notified that Plaintiff was represented by counsel;

10. employing a business model that requires, as a condition of applying for credit, to waive all privacy rights under any state, federal or military statute, law or directive;

11. employing a business model that requires, as a condition of applying for credit, to waive all of protections under any state or federal fair debt collection practices statute to the fullest extent permitted by law;

12. continuing to attempt to collect on a non-existent debt after Defendants represented to Plaintiff that he made a final payment in June of 2000;

13. continuing to attempt to collect a debt for which the statute of limitations on the underlying contract has since expired;

14. falsely stating and/or implying Plaintiff's alleged debt is continuing to accrue interest; and

15. engaging in a pattern of conduct that, when taken in its totality, is deceptive.

(c) the supplier willfully failed to state a material fact, or willfully concealed, suppressed or omitted a material fact, in violation of K.S.A. § 50-626 (b)(3); and

(d) the supplier made false statements, knowingly or with reason to know, involving consumer rights, remedies or obligations, in violation of K.S.A. § 50-626 (b)(8).

90.     For the benefit of the general public, Plaintiff requests and is entitled to an injunction calculated to curb and prevent Defendants from continuing their practice of violating the Kansas Consumer Protection Act by engaging in the acts and practices set forth above.

WHEREFORE, for Count I of Plaintiff's Amended Complaint, Plaintiff respectfully prays that this Court enter judgment against Defendants in the amount of $20,000.00 for every violation of the Kansas Consumer Protection Act per K.S.A. § 50-636 (a), an injunction preventing Defendants from continuing to violate the Kansas Consumer Protection Act, for Plaintiff's costs and legal fees at $250.00 per hour for attorney A. Scott Waddell and Bryce B. Bell in maintaining this action per K.S.A. § 50-634(e), for pre and post-judgment interest at the greatest rate allowed by the State of Kansas, and for any other relief which the Court may deem just and proper.

**COUNT TWO**
**DECLARATORY JUDGMENT**
Defendant Freedom Stores, Inc.
Defendant Freedom Acceptance Corp.

91.     Plaintiff, for this Count Two of Plaintiffs' Amended Complaint against Defendants, incorporates the previous paragraphs as if wholly set forth herein.

92.     Pursuant to K.S.A. § 60-1701 *et seq*., Plaintiff prays that this Court declare that Plaintiff does not owe Freedom Stores, Inc. or Freedom Acceptance Corp. anything on any account and that Freedom Stores, Inc. and Freedom Acceptance Corp. or its agents be precluded from ever collecting this alleged debt from Plaintiff ever again.

WHEREFORE, for Count Two of Plaintiff's Amended Complaint, Plaintiff respectfully prays that this Court enter judgment and declare that Plaintiff does not owe Freedom Stores, Inc. or Freedom Acceptance Corp. anything and that Freedom Stores, Inc. and Freedom Acceptance Corp. be precluded from ever collecting this alleged debt from Plaintiff ever again, for Plaintiff's costs and legal fees at $250.00 per hour for attorney A. Scott Waddell and Bryce B. Bell in maintaining this action, for pre and post-judgment interest at the greatest rate allowed by the State of Kansas, and for any other relief which the Court may deem just and proper.

PLAINTIFF REQUESTS A JURY TRIAL ON ALL ISSUES SO TRIABLE PURSUANT TO K.S.A. § 60-238 AND FED. R. CIV. P. 38.

Respectfully submitted,

*/s/ Bryce B. Bell*
Bryce B. Bell        KS # 20866
Bell Law, LLC
2029 Wyandotte, Ste. 100
Kansas City, MO 64108
Telephone: 816-221-2555
Facsimile:  816-221-2508
Bryce@BellLawKC.com

*/s/ A. Scott Waddell*
A. Scott Waddell        KS# 20955
Waddell Law Firm LLC
2029 Wyandotte Street, Suite 100
Kansas City, Missouri 64108
Telephone: 816-221-2555
Facsimile:  816-221-2508
Scott@aswlawfirm.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

   The undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed with this Court and a copy served through the Court's electronic filing system to all counsel of record in this matter on September 25, 2013.  An additional copy was sent via e-mail on September 25, 2013 to:

Adam J. Gasper
agasper@mcdowellrice.com
Louis J. Wade
lwade@mcdowellrice.com

McDowell, Rice, Smith & Buchannan, PC
605 West 47th Street, Ste. 350
Kansas City, MO 64112
(816) 753-5400
(816) 753-9996 (Fax)
***Attorneys for Defendant***

               */s/ Bryce B. Bell*
               Bryce B. Bell, KS # 20866
               ***Attorney for Plaintiff***